## KALIS v. LEAHY.
### No. 10757.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 13, 1950.

Decided Jan. 31, 1951.
Writ of Certiorari Denied May 7, 1951.
See 71 S.Ct. 797.

Mr. Leo A. Rover, Washington, D. C., with whom Mr. Clarence G. Pechacek, Washington, D. C., was on the brief, for appellant.

Mr. James F. Reilly, Washington, D. C., with whom Mr. Eugene B. Sullivan, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Rose Kalis, the appellant, brought an action in the District Court against the executor of the estate of Annie A. Kilroy, deceased, for services as companion and nurse. She alleged the decedent promised to take care of her, implying that some provision to that effect would be made in her will, which was not done. The trial judge granted the motion of the executor to dismiss the complaint on the ground the action was barred by § 18–518 of the D.C. Code (1940), as amended June 24, 1949,[1] because not filed within three months after the executor had rejected the claim.

The section in question provides that when a claim is exhibited against an executor which he thinks his duty requires him to dispute or reject he may retain as-

1. Act of June 24, 1949, c. 242, 63 Stat. 268.

sets proportioned to the amount of the claim. If within nine months (as the statute read prior to June 24, 1949), or three months (as the amendment of that date provides), after he disputes or rejects the claim suit is not commenced upon it, "the creditor shall be forever barred; * * *." The effect is that if a claimant desires the executor to hold assets for his claim he must follow this special procedure. Otherwise he may sue within three years.

The relevant chronology, set forth in the margin,[2] shows that appellant's action was filed within nine but not within three months after rejection of the claim.

■ We think it clear the cause of action arose upon the death of the decedent on September 19, 1948.[3] This is stated in a negative manner in West v. Bauduit, 1929, 59 App.D.C. 74, 75, 33 F.2d 370, 371, as follows:

" * * * The action for services must be brought within three years from the time the services were performed, but if the agreement was that they were to be compensated for by a provision in the will, then no cause of action arose until the death of the decedent, * * *."

In Tuohy v. Trail, 1901, 19 App.D.C. 79, 88, it is said that where it was understood by both parties that compensation for services should be made by a will and this is not done, an action lies to recover their value. It is implicit in this statement that the action accrues when the party dies without making compensation by will, especially as the court goes on to say that if such a contract be found by the jury the statute of limitations would not bar the action, meaning, no doubt, that the statute would not begin to run until the death. We construe Clawans v. Sheetz, 1937, 67 App.D.C. 366, 92 F.2d 517, to like effect. There this court in holding that the limitation of nine months was not applicable to a suit on a rejected claim which had not been authenticated, said that the three-year general period applied in such a case.

Rejection of the claim, which sets in motion the running of the shorter period within which suit must be filed under the special procedure, does not fix the time of accrual of the cause of action itself. Whether this shorter or the three-year period applies, the claimant would be pursuing the same cause of action, namely, the claim against the estate for services rendered the decedent.

■ We have, then, a case in which, after the cause of action had arisen, but before the choice of procedure had been acted upon, Congress reduced the time within which a suit could be filed under the special procedure which was subsequently followed. There is no constitutional barrier which precludes holding this shortened period applicable to a claim in existence when the change was enacted, provided a reasonable time remained within which to sue. Terry v. Anderson, 1877, 95 U.S. 628, 633, 24 L.Ed. 365. The question is simply whether Congress intended the amendment to apply to claims then existing against estates under administration when Congress intervened.

■ The general rule which aids the courts in arriving at the intent of Con-

2. September 19, 1948......................Death of Annie A. Kilroy.
   October 5, 1948..........................Admission of decedent's last will and testament to probate; qualification of appellee as executor.
   June 24, 1949............................Amendment of § 18–518 of the D. C. Code (1940), reducing the period for bringing suit on rejected claims from 9 months to 3 months.
   October 27, 1949........................Rejection of appellant's claim by appellee as executor.
   May 12, 1950............................The commencement of the instant suit by appellant in the District Court.

3. It is not necessary to consider a variation of this proposition which might result from the fact that an action could not reach the appropriate defendant until appointment of an executor or administrator.

gress as to the time a statute takes effect in relation to conditions when it is enacted is that it will not be given retroactive effect unless this is required by explicit language or necessary implication. United States v. St. Louis, S. F. & T. Ry. Co., 1926, 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435; U. S. Fidelity & Guaranty Co. v. U. S. for Use and Benefit of Struthers Wells Co., 1908, 209 U.S. 306, 314, 28 S.Ct. 537, 52 L.Ed. 804. To apply the June 24, 1949, amendment to this case, however, would not in any precise sense offend this rule were the claim considered apart from the fact that administration of the estate had begun; for while it is true the cause of action had arisen when the amendment was approved, the claim had not been presented or rejected. Therefore, the period of limitation, whether three or nine months, had not then begun to run.

█ Administration of the estate, however, had begun. This is important because the amendment in question is but one of several made by the same statute. Eight periods of time, other than the one now involved, and all having to do with the administration of estates, are affected by the amending statute; seven periods are shortened and one appears for the first time. An examination of these other amendments[4]

discloses that they deal with periods which begin to run either from the death of the decedent, the appointment of the personal representative, or the service of summons upon an absent executor. To apply them to estates already in the process of administration would be giving a retroactive effect—the shortening of periods which had begun to run—not required by "explicit language or by necessary implication." Furthermore, it would make such application of very questionable validity in some instances because of the quite limited period left for action. Indeed, in some cases conformance might be impossible. In these circumstances it is reasonably clear that Congress did not purpose any general application of the amending statute to estates in process of administration. The problem therefore narrows to whether we should isolate the amendment of § 18–518 from the other eight, and hold that Congress intended it to apply to such estates but that its companion amendments should not.

The answer is not clear; but in view of the general intent of the Act as a whole, considered with the substantial reduction from nine to three months made in § 18–518, we do not think we should attribute to Congress an unexpressed purpose to differentiate with respect to this one amend-

4. They are summarized as follows: (a) In § 18–501 which provides that on the death of a person not domiciled in the District of Columbia so much of his estate therein as may be necessary to pay claims of creditors there domiciled shall be subject to administration of the probate court, the time within which such claims shall be prosecuted is reduced from one year to six months; (b) the time prescribed by § 20–306 within which an executor, who was not present at probate but is within the District, must appear, or else administration may be otherwise granted, is reduced from twenty to five days when he is summoned, and from thirty to ten days when he is given notice by publication; (c) the time prescribed by § 18–401 within which an executor, administrator or collector, after his appointment, shall make true inventory, is reduced from three to two months; (d) the time specified in § 18–407 within which an executor or administrator shall return a new

inventory, or acknowledges receipt of the articles contained in the inventory filed by a collector, is reduced from three to two months; (e) the provision of § 18–526 that an executor or administrator who, after one year, has paid away assets to discharge just claims shall not be answerable for any claim of which he had no knowledge or notice by its exhibition legally authenticated, is changed to a period of six months; and the provision of the same section conditioning the above by requiring that at least six months before he shall make distribution he shall cause the specified advertisement to be published, is changed by reducing the period to three months; and (f) the requirement of § 20–601 that every executor and administrator shall render to the probate court his first account within twelve months from the date of his letters is amended by adding the proviso that said account may be rendered six months from such date.

ment.[5] In view of the uncertainty as to the legislative intent preference should be given by the court to a construction which precludes application of the particular amendment to claims against estates in process of administration at the time of its enactment. This gives effect to the amendment of § 18–518 in a manner which is consistent with the general intent of Congress evidenced by the amending statute as a whole. Accordingly, the nine months limitation governs this case and the suit was brought within time.

Reversed.

5. Cf. U. S. Fidelity & Guaranty Co. v. U. S. for Use and Benefit of Struthers Wells Co., supra, where the Supreme Court, when faced by an analogous problem of "splitting" the intent of Congress, held that the provisions of the amendatory statute there involved should not be construed to apply retroactively as to one matter and prospectively as to others. 209 U.S. at page 316, 28 S.Ct. 537.